IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MODULAR SPACE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-cv-06742 |
| | ) |
| INTELLI-SPACE MODULAR | ) Judge John W. Darrah |
| BUILDINGS, INC. | ) |
| | ) Magistrate Judge Keys |
| Defendant. | ) |

### ANSWER TO AMENDED COUNTERCLAIM

Plaintiff, Modular Space Corporation, ("Modular Space"), by and through its attorneys, for its Amended Answer to Counterclaim, states as follows:

### COUNTERCLAIM

1.  For approximately eight (8) years, Defendant has served as the sole Chicago liaison and broker for Plaintiff. Defendant's duties included procuring storage space, marketing, sales, scheduling, storing, transporting, maintenance, and other activities as needed to service modular customers in the Chicago area. After Plaintiff opened a location in Chicago, Defendant sold, marketed, and continued to serve as a partner sales force in the area. Defendant assisted Plaintiff's employees with respect to specifications, engineering, and customer services for Plaintiff's customers and supplied Plaintiff's equipment to Defendant's customers. Defendant supplied some twenty-two (22) new customers, new buildings, and new leases for Plaintiff.

ANSWER: Plaintiff denies the allegations of the first three sentences of Paragraph 1. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1, and therefore denies the same.

2.  Defendant has invoiced Plaintiff and Plaintiff has paid Defendant for invoices for service work (more than thirty (30) service orders) supplied to Defendant's customers and Plaintiff's customers for Plaintiff's equipment. Plaintiff and Defendant have had a long symbiotic relationship, whereby Defendant would find projects and customers for Plaintiff. (Defendant retains over 1,000 pages of documents pertaining to their association of Defendant working all the deals to move Plaintiffs equipment in this area). Many of the deals were with new equipment that Defendant designed, specified, and built for a lease through Plaintiff. Other deals were with existing, used equipment owned by Plaintiff and Defendant was paid a commission to move that equipment.

ANSWER: Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2, and therefore denies the same.

3. Defendant invoiced Plaintiff for commissions in connection with Defendant bringing lease deals to Plaintiff.

ANSWER: Plaintiff admits that Defendant has invoiced it for certain commissions, but denies that those commissions were legitimately owed.

4. Defendant brought its customer, East Lake Management, to Plaintiff to enter into an Operating Lease Agreement on a commission basis as had been a customary arrangement between Defendant and Plaintiff. Prior to this date, Plaintiff has never had any transactions with or knowledge of East Lake Management.

ANSWER: Plaintiff denies the allegations of Paragraph 4.

5. In June of 2005, Defendant demanded that Plaintiff pay it a commission in connection with Plaintiffs lease with Diversified Real Estate, by issuing an invoice to Plaintiff seeking payment of $1,428.00.

ANSWER: Plaintiff admits that Defendant issued the alleged invoice and demanded payment of a commission, but denies that said commission was legitimately owed.

6. Defendant dealt with Patrick Johnson in Resun's Aurora office with respect to the three (3) deals at issue. These leases were Gladstone Builders (Lease # 4520075), East Lake Management (Lease # 4520952), and Developers Design Group (Lease # 4523526).

ANSWER: Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6, and therefore denies the same.

7. Ricky Matlock explained to Mr. Johnson what the previous arrangements had been and went on to do these deals. While there was no written agreement concerning these commissions in question, Defendant operated these deals in like and similar manner as had been with previous deals for several years. During this period, Defendant was notified that Bank of America had taken control of Plaintiff and that no such commission arrangement now existed between Plaintiff and Defendant. Lisa Barns at Bank of America notified Defendant that Plaintiff would not honor the previous agreements. At no time before these deals did Plaintiff ever disclose to Defendant the sale of their business Resun, nor was Defendant notified of a change in terms of Defendant's and Plaintiff's business association.

ANSWER: Plaintiff denies the allegations of Paragraph 7.

8. Defendant is owed a total of $12,228.00 for commissions on the subject invoices. Plaintiff is liable for this amount. Because Plaintiff had paid Defendant commissions in prior dealings, Defendant had justifiably presumed that commissions would be paid as per the parties' customary agreement. As with previous deals, when the final customer had not approved Plaintiff as a vendor, Defendant invoiced and would collect rent payments and then forward to Plaintiff to credit customer's account. When Plaintiff refused to pay Defendant the commission owed, then Defendant retained such payments until the commissions were paid. These monies were held to off-set the unpaid commissions due Defendant from Plaintiff. When Plaintiff refused to pay commissions due Defendant, then Defendant ceased paying rent due Plaintiff to off-set the unpaid commissions owed Defendant from Plaintiff.

ANSWER: Plaintiff denies the allegations of Paragraph 8.

9. Furthermore, Defendant has not paid storage fees due from Plaintiff on the ten (10) modular units stored in Defendant's yard since June of 2005. At the original rate of $40.00 per unit, per month, for the thirty-six (36) months in arrears, there is a total of $14,400 due and owing for rent, i.e., 10 units x $40.00 each = $400.00/mo. x 36 months = $14,400.00.

ANSWER: Plaintiff denies that it owes any of the storage fees alleged in Paragraph 9.

## AFFIRMATIVE DEFENSES

1. Defendant's counterclaim fails to state a cause of action for violation of any common law principal or statute upon which relief can be granted.

2. Defendant's counterclaim fails, in whole or in part, because any alleged oral contract entered into by the parties is barred by the Statute of Frauds.

3. Defendant's counterclaim is barred, in whole or in part, by the doctrines of unclean hands, waiver, and estoppel.

4. Defendant's counterclaim is barred, in whole or in part, by its failure to mitigate any alleged damages.

Dated: June 19, 2008                    MODULAR SPACE CORPORATION,


                                        By: /s/ Stephen R. Meinertzhagen
                                            One of Its Attorneys

13367\00001\472448.1                              3

Stephen R. Meinertzhagen
Susan J. Miller
Attorneys for Plaintiff
Burke, Warren MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611
Phone: (312) 840-7000
Fax: (312) 840-7900
Attorney No. 41704

## CERTIFICATE OF SERVICE

The undersigned, an attorney, on oath, deposes and states that on this 19th day of June, 2008, a true and correct copy of the foregoing Answer to Amended Counterclaim was filed electronically. Notice of this filing will be sent to all registered counsel of record via the Court's electronic filing system.

/s/ Stephen R. Meinertzhagen

13367\00001\472450.1